UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SHANE MICHAEL MYERS, | ) | Case No. 21-40016-crm |
| | ) | Chapter 13 |
| DEBTOR | ) | |
| | ) | |
| _____ | ) | |

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the objection to confirmation of Debtor's Chapter 13 plan by creditor Blue Ridge Bank & Trust (hereafter "Blue Ridge"). On March 2, 2021, Blue Ridge filed an Objection to Confirmation, [R. 12], taking issue with Debtor's pre-petition purchase of a 2000 Baja Outlaw boat, and more specifically, his desire to keep the boat and make payments on Blue Ridge's lien through his Chapter 13 plan.

The facts of this case, as set forth in Blue Ridge's objection and Debtor's Memorandum in Support of Confirmation, [R. 25], are undisputed. In 2019, Debtor decided to purchase a boat for recreational purposes and began searching online sites that advertised used boats for sale. Debtor identified a 2000 Baja Outlaw boat ("the Boat"), with an included trailer, that he thought would meet his requirements. The Boat was located in Independence, Missouri and was being sold by Landon Holmes for an asking price of $38,500. Because the Debtor did not have experience assessing the value of boats, he enlisted the help of a friend who had such experience. Debtor asked his friend to travel to Missouri, assess the Boat, and, if it was in good condition, purchase it. To purchase the Boat, Debtor entered into a loan agreement with Farmers and Merchants Bank (hereafter "Farmers Bank") in which the bank loaned Debtor $38,500, in the form of a cashier's

1

check, in exchange for a lien on the Boat. Debtor gave the cashier's check to his friend prior to sending him to Missouri to assess the Boat. Ultimately, Debtor's friend approved the sale and accepted an endorsed title, the Boat, and trailer from Mr. Holmes. Debtor's friend then returned to Kentucky with these assets.

However, when Debtor took possession and attempted to transfer title into his name, he was informed that the Boat was already encumbered with a lien on the title.[1] Unbeknownst to Debtor, Mr. Holmes had previously entered into a Note and Security Agreement with Blue Ridge for the purchase of the Boat in July of 2018, and as a result, a Kentucky certificate of title could not be issued to Debtor because title to the Boat was encumbered by Blue Ridge's lien. By the time Debtor discovered this prior lien and his inability to acquire a certificate of title, the seller had vanished, leaving behind an unpaid balance of approximately $22,000 owed to Blue Ridge and secured by the Boat. When Debtor ceased making loan payments on the $38,500 note, Farmers Bank initiated a lawsuit against him, at which point Debtor filed this bankruptcy to stay the lawsuit and address the cloud on the title to the Boat.

Debtor has proposed an 11% plan with a weekly payment of $138.46 (or approximately $553.84 per month) to the trustee for five years, amounting to a total payment of $36,000. Blue Ridge objects because: (i) Debtor does not have title to the Boat and thus should not be allowed to include it in the reorganization; and (ii) Debtor lacked good faith in proposing an infeasible plan that sought to retain a luxury item, the Boat, over repaying his unsecured creditors.

On May 12, 2021, this matter came before the Court for a hearing on the pending objections to confirmation. *See* May 12, 2021 Hearing Transcript, [R. 36]. The Chapter 13 trustee, when

---

[1] It remains unclear whether Debtor's friend was aware of the lien on the title upon purchasing the Boat in Missouri, or whether Debtor and/or his friend came to learn of the lien's existence after the Boat was transported to Kentucky. However, the parties agree that Blue Ridge's interest in the Boat was indicated on the title when Holmes endorsed it.

2

asked what their position was during the hearing, recommended confirmation of the plan, agreeing that the boat "is property of the bankruptcy estate," May 12, 2021 Hearing Transcript, [R. 36], Tr. 7:23, and that Debtor's plan is feasible where it commits all disposable income, Tr. 8:12-16, and complies with the applicable commitment period. Tr. 8:5-11.[2] The Court then heard arguments from Debtor's counsel, counsel for Blue Ridge, and counsel for Evansville Teachers Federal Credit Union ("ETFCU")[3], before instructing Debtor and Blue Ridge to file briefs addressing Blue Ridge's objection. [R. 26]. The parties accordingly filed briefs regarding Blue Ridge's objection to confirmation, [Rs. 30, 31], at which time the matter was taken under advisement. However, upon determining that the parties' briefs failed to adequately address a key consideration – namely, whether the Boat is property of the bankruptcy estate – the Court removed the matter from submission, [R. 32], and scheduled a subsequent hearing to hear arguments from Debtor and Blue Ridge regarding that specific issue. The Court permitted the parties to file additional briefs on that specific question prior to the hearing if they wished, but none were filed.

On August 10, 2021, a second hearing was held, during which the parties were given an opportunity to make arguments regarding whether the Boat was property of the bankruptcy estate. Debtor's counsel explained that the Boat is still in Debtor's possession, currently in storage and unused. *See* August 10, 2021 Hearing Transcript, [R. 40], Tr. 2:17-20. When pressed about the prudence of his client's purchase, given the preexisting lien, Debtor's counsel acknowledged that his client incorrectly "assumed that the bank would take care of all that" and "it was a surprise to [Debtor] that that lien hadn't been taken care of." Tr. 4:8-9, 13. Though Debtor's counsel

---

[2] Trustee noted at the May 12, 2021 hearing that, although Debtor is below the medium income in the six months pre-petition, and could qualify for a three-year plan, Debtor has still opted for a five-year commitment plan, thereby committing more income to pay his creditors. May 12, 2021 Hearing Transcript, [R. 36], Tr. 8:5-11.

[3] Evansville Teachers Federal Credit Union had also previously objected to confirmation of Debtor's plan on other grounds, *see* [R. 14], but that objection was resolved via Agreed Motion, *see* [Rs. 28, 29], and is not relevant to the underlying dispute regarding the Boat.

3

repeatedly acknowledged that Debtor is unable to get title transferred in his name or pass good title to someone else under these circumstances, *see* Tr. 4:1-2, 5:10-12, 24, 6:7-9, he argued that Debtor must still have "some rights in that boat, subject to the lien," Tr. 5:11-12, because he gave value for the Boat. Still, Debtor's counsel admitted that, due to being unable to register the boat in Kentucky, there are "some things [Debtor] can't do with [the Boat] . . . it can't be transferred as long as that lien's on there. That's clear." Tr. 6:7-9.

Debtor's counsel also acknowledged at the hearing that Debtor had not been paying property taxes on the Boat due to his inability to register or title the Boat. Tr. 10:9-13. When asked how Blue Ridge would retake possession of the Boat if Debtor were to unfortunately die, counsel indicated he assumed the estate would have the option to pay the creditor or have the bank come repossess the Boat, Tr. 7:13-19, but the solution remained unclear. Counsel for Blue Ridge meanwhile reiterated their concerns with the cost efficiency and effectiveness of Debtor's insurance on the Boat, given his inability to title it in his name, Tr. 15:1-4, and underscored that the bank's only recourse is against the collateral here because they have no contractual relationship with Debtor and no rights against the Debtor. Tr. 12:7-8. Following arguments, the Court again took the matter under advisement on August 27, 2021.

\* \* \* \* \*

### I.      Debtor's Property Interest in the Boat

There are two alternative bases establishing that the Debtor has a legally cognizable property interest in the Boat: his property rights under state law, and his possessory interest under federal law.

#### A.      State Law Property Rights

Pursuant to 11 U.S.C. § 541(a)(1), property of the estate in bankruptcy is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."

4

11 U.S.C. § 541(a)(1).  The scope of Section 541 is intentionally broad, encompassing "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993); *see United States v. Whiting Pools*, 462 U.S. 198, 204–05 (1983).  However, the word "property" is not defined by the Bankruptcy Code.  *Meoli v. Kendall Elec., Inc.* (*In re R.W. Leet Elec., Inc.*), 372 B.R. 846, 852 (B.A.P. 6th Cir. July 19, 2007) (the Bankruptcy Code does not define "property of the debtor"); *see also Weaver v. Aquila Energy Mktg. Corp.*, 196 B.R. 945, 949 (S.D. Tex. 1996) ("The term 'property' or 'interest in property' is not defined in the Bankruptcy Code.  Therefore, courts must look to state law to determine what constitutes property and when property interests are acquired.").

As such, it has become axiomatic in bankruptcy law that property rights are determined by reference to state law.  *AllCare Med. Servs., LLC v. Buzulencia* (*In re Lagroux*), No. 19-8024, 2020 Bankr. LEXIS 1609, at *1 (B.A.P. 6th Cir. June 19, 2020) ("State law defines a debtor's interest in property.  Once property rights are determined under state law, federal bankruptcy law dictates the extent to which the debtor's interest becomes property of the estate."); *Town Ctr. Flats, LLC v. ECP Commer. II LLC* (*In re Town Ctr. Flats, LLC*, 855 F.3d 721, 724 (6th Cir. 2017) ("In a bankruptcy case, property rights are determined under the law of the state in which the real property is located.").  The facts of this case require the Court to determine whether the Debtor has a property interest in the Boat under Kentucky law.[4]  In order to make this determination, this Court must interpret Kentucky's statutes relevant to ownership of a motorboat in the state.  On the subject of statutory interpretation, the Supreme Court has instructed lower courts that "when the statute's language is plain, the sole function of the courts--at least where the disposition required

---

[4] In its initial objection to the Debtor's plan, Blue Ridge stated that "the Debtor apparently attempted to purchase the Boat from Landon Holmes, but any such attempted purchase was subject to Blue Ridge's security interest and without Blue Ridge's knowledge or consent."  [R. 12 at 1].  Thereafter, however, Blue Ridge failed to provide any argument or cite any precedent to demonstrate that the transfer was invalid.

5

by the text is not absurd--is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004).

More specifically for this case, the Sixth Circuit Court of Appeals has explained that when "interpret[ing] a state or municipal ordinance, federal courts look to see whether state courts have spoken on the issue." *O'Neill v. Louisville/Jefferson Cnty. Metro Gov't*, 662 F.3d 723, 728 (6th Cir. 2011). If, as here, the court cannot find any relevant precedent, then "federal courts will look to the words of the ordinance itself, the interpretations the state court has given to analogous statutes, and perhaps to some degree, the interpretation of the statute given by those charged with enforcing it to determine the meaning of the ordinance." *Id.* Further, the Sixth Circuit explained that, to accurately understand the plain meaning of a particular statute, it must be interpreted within the broader statutory context as a whole. *Id.* at 728 (citing *Lichtenstein v. Barbanel*, 322 S.W.3d 27, 35 (Ky. 2010).

In Kentucky, the owner of a motorboat is defined as "a person, other than a lienholder, having the property in or title to a motorboat." Ky. Rev. Stat. § 235.010(3). The phrase "having property in" indicates that this definition of "owner" includes persons who have some property interest in the motorboat, but not title to it. Consideration of the whole statutory context in which this definition is used further clarifies that the word "owner" applies to persons other than the title holder of the motorboat: "before the *owner* or operator of each motorboat required to be registered and numbered by KRS 235.040 may operate it or permit its operation upon the waters of this state, the *owner shall apply for title* and registration to the county clerk of the county in which he resides." Ky. Rev. Stat. § 235.050 (emphasis added). The phrase "the owner shall apply for title" indicates that the person in question does not have a Kentucky title yet, but nonetheless, owns the motorboat in question. As such, a plain reading of Ky. Rev. Stat. § 235.050 makes clear that the

6

legislature envisioned a circumstance where a person could be the owner of a motorboat despite not holding title to it.

The Debtor paid Holmes $35,800 for the Boat and trailer, receiving an endorsed Missouri certificate of title in exchange. This transaction gave the Debtor a property interest in the Boat, and therefore, he became an owner of the Boat under Kentucky law. Although it is true that Kentucky currently refuses to issue the Debtor a certificate of title, and this restricts his use of the Boat in this state, he is nonetheless the Boat's owner under Kentucky law. As detailed above, Kentucky law recognizes that a person can be the owner of a motorboat without having title to it. In sum, the Debtor is an owner – having the "property in" the Boat – even if he cannot attain either a certificate of title or registration for the Boat.

      **B.**      **Federal Law: Possessory Interests and Section 541**

The foregoing, standing alone, provides a sufficient legal basis for this court to hold that the Debtor has a cognizable property interest in the Boat, thereby allowing him to include it in his Chapter 13 plan. However, courts in the Sixth Circuit have also developed a federal jurisprudence establishing that Section 541 protects mere possessory interests in property that a debtor has at the time they file for bankruptcy relief. *See In re Convenient Food Mart No. 144, Inc.*, 968 F.2d 592, 594 (6th Cir. 1992) (holding that the debtor's mere possessory interest over the leasehold at issue was an "interest in real property within the scope of the estate in bankruptcy under section 541."); *Bank of Ky., Inc. v. Nageleisen (In re Nageleisen)*, 523 B.R. 522, 528 (Bankr. E.D. Ky. 2014) (explaining that "this Court has recently held [that] the possessory interest in property of a debtor who lacks legal title to that property is property of the estate."); *Chrysler LLC v. Plastech Engineered Prods. (In re Plastech Engineered Prods.)*, 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (explaining that possessory interest by itself is sufficient for the automatic stay to apply); *Shaw v. Farmers Deposit Bank (In re Shaw)*, Nos. 11-30032, 11-3003, 2012 Bankr. LEXIS 1552, at *9

7

(Bankr. E.D. Ky. Apr. 9, 2012) (holding that a possessory interest in a mobile home a debtor rented was property of the estate); *In re Thorpe*, No. 10-52156, 2011 Bankr. LEXIS 626, at *2 (Bankr. E.D. Ky. Feb. 16, 2011) (holding that a debtor who had a possessory interest in a mobile home could address claims attached to it through a Chapter 13 plan).

"In explaining the scope of 11 U.S.C.S. § 541(a)(1)'s definition of property, Congress used the term 'possessory interest,' not 'possession.' A possessory interest is a right to possess property by virtue of an interest created in the property though it need not be accompanied by title. When read against the backdrop of § 541(a)(1), which refers to equitable interests, a possessory interest refers to cases in which the debtor has some right to possess the property. *In re Printup*, 264 B.R. 169, 171 (Bankr. E.D. Tenn. 2001).

Indeed, throughout the country, the majority position among courts considering this issue is that a possessory interest in property becomes a part, and receives the protections, of the bankruptcy estate. *See ICC v Holmes Transp., Inc.*, 931 F.2d 984, 987 (1st Cir. 1991) (vacated and remanded on other grounds) (the automatic stay precludes and nullifies most post-petition actions and proceedings against the debtor, including acts "affecting property in which the debtor, or the debtor's estate, has a legal, equitable or possessory interest"); *In re Salov*, 510 B.R. 720, 729 (Bankr. S.D.N.Y. 2014) ("[p]roperty of the estate encompasses *all* rights and interests that a Debtor may have in a property," including the right to possess); *Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Corp.)*, 901 F.2d 325, 328 (3d Cir. 1990) ("a possessory interest in real property is within the ambit of the estate in bankruptcy under Section 541, and this the protection of the automatic stay of Section 362"); *Conn. Pizza v. Bell Atl.-Washington (In re Conn. Pizza)*, 193 B.R. 217 (Bankr. D. Md. 1996) (possessory interest in property protected by the automatic stay); *Boydstun v. Reed*, 218 B.R. 840, 841 (N.D. Miss. 1998) ("Section 541 of the

8

Bankruptcy Code . . . clearly indicates that a possessory interest of the Debtor is clearly protected by the automatic stay"); *In re Convenient Food Mart No. 144, Inc.*, 968 F.2d 592, 594 (6th Cir. 1992) (debtor's mere possessory interest over the leasehold at issue was an "interest in real property within the scope of the estate in bankruptcy under section 541"); *In re Wright*, 183 B.R. 541, 545 (Bankr. C.D. Ill. 1995) ("[a] possessory interest is sufficient to invoke the protection of the automatic stay"); *Lankford v. Advanced Equities Inc.*, 305 B.R. 297, 301 (Bankr. N.D. Iowa 2004) ("[a]ll recognizable interests of the debtors or the estate are afforded the protection of § 361(a) . . . includ[ing] a mere possessory interest in real property without any accompanying legal interest"); *Galam v. Carmel (In re Larry's Apartment, L.L.C.)*, 249 F.3d 832 (9th Cir. 2001) (Debtor's possessory interest in real property should have been included in the bankruptcy estate); *In re Gagliardi*, 290 B.R. 808, 815 (Bankr. D. Colo. 2003) ("possessory interest [is] by itself an interest protected by the automatic stay"); *Trizec Colony Square, Inc. v. Gaslowitz (In re Addon Corp.)*, 231 B.R. 385, 389 (Bankr. N.D. Ga. 1999) ("[i]t is well established that a possessory interest may be protected by the § 362(a) automatic stay").

Amongst these decisions, *In re Thorpe* is the case that is most analogous to the facts at hand in this proceeding. In *Thorpe*, Sharon Thorpe ("Thorpe") entered into an installment contract to purchase a mobile home ("the Contract") from Charlie Fugate ("Fugate") on November 8, 2008. The Contract disclosed that Green Tree Servicing, LLC ("GTS") had a security interest in the mobile home securing a loan to Fugate. Under the terms of the Contract, Fugate would transfer title to the mobile home to Thorpe once GTS's loan was paid in full. On February 18, 2010, Fugate filed for Chapter 13 relief. In his bankruptcy papers, Fugate listed GTS as a secured creditor in the mobile home, but disclosed neither the Contract on Schedule G nor the payments from Thorpe on Schedule I. Fugate's Chapter 13 plan provided for the surrender of the mobile home, and GTS

9

was granted relief from stay.  Subsequently, Fugate amended his plan, but left the items related to the Contract and mobile home unchanged.  Fugate's amended plan attained confirmation.

On July 7, 2010, Thorpe filed a Chapter 13 case, listing the mobile home as her personal property and naming Fugate and GTS as creditors with security interests in the mobile home.  Thorpe's Chapter 13 plan proposed a cram down of GTS's claim from $21,800 to $9,041.  GTS filed both a proof of claim for $32,646.98, and a motion for relief from stay, in Thorpe's Chapter 13 case.  Thorpe objected to both.  The bankruptcy court determined that Thorpe's possessory and contractual interests in the mobile home were part of her bankruptcy estate.  As such, the court denied GTS's motion for relief.  However, the court also denied Thorpe's objection to GTS's proof of claim because she lacked privity with GTS.  The court explained that even though Thorpe's "interest in the mobile home is property of her estate, she has not provided any legal authority suggesting that this means she can cram down Green Tree's lien." *Id.* at *5.  In essence, the court determined that Thorpe: (i) had an interest that the stay protected; (ii) could include her interest in the mobile home in her Chapter 13 plan; and (iii) could not modify GTS's claim.

*Thorpe* stands for the proposition that a Kentucky debtor may address their possessory interest in personal property in which the debtor does not hold title.  In this case, similar to the circumstances in *Thorpe*, the Debtor has a possessory interest in the Boat, if nothing more. It follows, then, that the Debtor should be able to treat this property interest in his Chapter 13 plan.

## II.     Blue Ridge's Security Interest

Since the Debtor has a cognizable property interest in the Boat, the next question is whether the Debtor can modify Blue Ridge's claim through the plan.  As an initial matter, the Court notes that Blue Ridge's lien was duly perfected on the Boat's title at the time of the transfer from Holmes to the Debtor.  Under both Kentucky and Missouri law, a perfected security interest "continues in

10

collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest." Ky. Rev. Stat. § 355.9-315(1)(a); Mo. Rev. Stat. § 400.9-315(a)(1); *see Madison Capital Co., LLC v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 930 (W.D. Ky. 2011); *Bank of the W. v. Damon Pursell Constr. Co. (In re Damon Pursell Constr. Co.)*, 490 B.R. 367, 373 (B.A.P. 8th Cir. 2013); *see also* Ky. Rev. Stat. § 355.9-401 (addressing the alienability of the account debtor's interest in the collateral); *Summit Petroleum Corp. v. Ingersoll-Rand Fin. Corp.*, 909 F.2d 862, 866 (6th Cir. 1990). As such, the Debtor took the collateral subject to the security interest of Blue Ridge, and the attendant default remedies the bank has under the law of Missouri. *See Bank of the W. v. Damon Pursell Constr. Co. (In re Damon Pursell Constr. Co.)*, 2011 Bankr. LEXIS 4741, at *10–11 (Bankr. W.D. Mo. Dec. 8, 2011)[5]. Among the remedies that Blue Ridge has at its disposal is the right to receive the proceeds from the sale of the Boat. *Id.* at *11 ("[U]nder Mo. Rev. Stat. § 400.9-315(a)(1), a security interest continues in collateral notwithstanding its sale to a third party. And under § 400.9-315(a)(2) a security interest attaches to identifiable proceeds of collateral.").

Since Blue Ridge has an unquestioned right to the proceeds of the sale of the Boat, it has a claim that can be included in a Chapter 13 plan. *See* 11 U.S.C. § 101(5); *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991). In *Johnson v. Home State Bank*, the Supreme Court was faced with a situation closely analogous with the facts of this case. In *Johnson*, Johnson borrowed $470,000 from Home State Bank ("HSB") and gave the bank a mortgage on his farm as security for the loan. Eventually, Johnson defaulted on the loan, and the bank initiated foreclosure proceedings, causing Johnson to file a Chapter 7 bankruptcy. During the Chapter 7 case, HSB sought, and received,

---

[5] Under the Uniform Commercial Code, as enacted in both Kentucky and Missouri, the Debtor in this case became a "debtor" in relation to Blue Ridge at the time he purchased the Boat from Holmes. *See* Ky. Rev. Stat. § 355.9-102(1)(ab); Mo. Rev. Stat. § 400.9-102(a)(28).

11

relief from the automatic stay while Johnson received a discharge. Ultimately, HSB received a judgement of foreclosure against Johnson's farm for $200,000. Prior to the completion of a foreclosure sale, Johnson filed a Chapter 13 case and proposed a plan that included his retention of the property in exchange for repayment of the amounts owed to HSB. HSB objected arguing that its mortgage obligation could not be treated in Johnson's plan because he did not have *in personam* liability for the mortgage. The bankruptcy court confirmed Johnson's plan, but HSB appealed, prevailing on its argument at both the district and appellate courts.

Thus, the Supreme Court in *Johnson* was tasked with determining "whether a mortgage lien that secures an obligation for which a debtor's personal liability has been discharged in a Chapter 7 liquidation is a 'claim' subject to inclusion in an approved Chapter 13 reorganization plan." *Id.* at 82. The Supreme Court's analysis turned on the definition of the word "claim" under Section 101 of the Bankruptcy Code. Section 101 defines "claim" as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). After stressing that Congress intended the broadest possible definition of the term "claim," the Court explained that "'right to payment' [means] nothing more nor less than an enforceable obligation." *Johnson*, 501 U.S. at 83. The Court then concluded that HSB had a claim under Section 101(5) because: (i) HSB "retained a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property;" and (ii) "the creditor's surviving right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation." *Id.* at 84.

The facts in the case at bar are substantially similar to those of *Johnson*. Blue Ridge has a right to payment through its right to the proceeds from the sale of the Boat. This right, standing alone, establishes that Blue Ridge has a claim which can be included in, and modified by, the Debtor's Chapter 13 plan.

### III. The Debtor's Good Faith and Feasibility Under the Plan

#### A. Debtor's Good Faith Under Section 1325

Blue Ridge argues that the Debtor's plan was not filed in good faith because he is attempting to retain the Boat. This decision, Blue Ridge argues, amounts to bad faith because it adversely effects the interests of the Debtor's unsecured creditors. Section 1325 contains a two-prong analysis that requires a debtor to file both their petition for relief, and their repayment plan, in good faith. 11 U.S.C. § 1325(a)(3), (7). As courts have often stated, the Bankruptcy Code does not define the term "good faith." *See, e.g.*, *In re Barrett*, 964 F.2d 588, 591 (6th Cir. 1992). Instead, the Sixth Circuit has directed bankruptcy courts to assess the totality of the circumstances in a particular case when addressing "good faith." Within a good faith assessment, "[t]he critical issue is whether there is 'a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources.'" *Id.* at 592 (citing *In re Okoreeh-Baah*, 836 F.2d 1030, 1033 (6th Cir. 1988)). In addition, the Sixth Circuit has enumerated twelve factors that "a bankruptcy judge should weigh in making a good faith determination":

(1) the debtor's income;
(2) the debtor's living expenses;
(3) the debtor's attorney fees;
(4) the expected duration of the Chapter 13 plan;
(5) the sincerity with which the debtor has petitioned for relief under Chapter 13;
(6) the debtor's potential for future earning;
(7) any special circumstances the debtor may be subject to, such as unusually high medical expenses;

13

(8) the frequency with which the debtor has sought relief before in bankruptcy;
(9) the circumstances under which the debt was incurred;
(10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt;
(11) the burden which administration would place on the trustee; and
(12) the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.

*Id.* Nonetheless, the Sixth Circuit has made clear that "[g]ood faith is an amorphous notion, largely defined by factual inquiry" and that it is impossible to "promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation." *Okoreeh-Baah*, 836 F.2d at 1033.

The facts available to this Court relating to this Debtor make clear that he has filed his petition and plan in good faith. Pre-petition, the Debtor made a mistake in attempting to purchase a boat without ensuring that any pre-existing liens were satisfied prior to the transfer. There is no evidence in the record that the Debtor engaged in pre-petition conduct which was intentionally fraudulent or wrongful to Blue Ridge or any other creditor. The Debtor sought bankruptcy relief because Farmers Bank filed a collection action against him, not as a means to delay, defraud, or frustrate his creditors in any discernable manner. During the post-petition period, the Debtor has acted with the requisite good faith required for confirmation. He has reported modest living expenses and pledged every dollar of his net disposable income to the plan. Each of the twelve factors from *Okoreeh-Baah* that are applicable to this case weigh in favor of finding that the Debtor has acted in good faith. Accordingly, the Court holds that Blue Ridge's objection on this ground is without merit.

      **B.**     **Feasibility of Debtor's Plan Under Section 1325(a)(6)**

Blue Ridge advances the notion that Debtor's plan is not feasible. Blue Ridge premises this argument on the size of the Boat payment in relation to the overall monthly plan payment:

14

$564 per month for the Boat compared to $600 per month for the plan. According to Blue Ridge, due to this payment structure, instead of paying eleven percent to unsecured creditors over sixty months, the plan presents them with no return at all. It follows, Blue Ridge concludes, that the plan cannot be confirmed because it is contrary to the law.

To confirm a Chapter 13 plan, Bankruptcy courts must assess whether "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). A party lodging a feasibility objection to the plan bears the initial burden to show that this requirement is unmet, thereafter the burden shifts to the debtor to make the opposite showing. *In re Gomery*, 523 B.R. 773, 788–89 (Bankr. W.D. Mich. 2015) (once a party has objected to the feasibility of the plan, "the burden of demonstrating the feasibility of the proposed chapter 13 plan is on the Debtor."). To meet this standard, a debtor need not show that success under the terms of their plan is guaranteed. *In re Anderson*, 28 B.R. 628, 630 (S.D. Ohio 1982). Instead, the facts in the record must demonstrate that the plan has a "reasonable likelihood of success." *Id.* The primary consideration in determining feasibility is whether "a debtor's budget shows a clear inability to make the proposed plan payments." *Ruskin v. Blackshear (In re Blackshear)*, 531 B.R. 711, 718–19 (E.D. Mich. 2015); *see also In re Bernardes*, 267 B.R. 690, 695 (Bankr. D.N.J. 2001). This determination is malleable and *ad hoc*, but "visionary or speculative Chapter 13 plans will not meet the feasibility standard." *DeHart v. Eckert (In re Eckert)*, 485 B.R. 77, 85 (Bankr. M.D. Pa. 2013).

In this case, the Debtor has proposed a plan in which he commits all of his disposable income to his creditors for a period of five years. There is no evidence in the record to suggest that the plan payment proposed by the debtor is speculative or untenable based on his income and expense levels. The plan proposes to pay $138.46 per week for sixty months, creating a total plan

15

fund, exclusive of tax refunds, of $35,999.60.[6] From this total amount, Debtor has proposed to pay the following secured and administrative claims:

| Creditor | Amount |
|---|---|
| Blue Ridge[7] | $25,387.75 |
| Evansville Teachers FCU[8] | $2,697.70 |
| Trustee Fee | $1,530.00 |
| Russ Wilkey, Attorney for the Debtor[9] | $1,880.00 |
| Total | $31,495.45 |

After these sums are paid, the Debtor would have approximately $4,504.15 remaining for his unsecured creditors to share. As stated above, the plan payment does not reflect the collection of the Debtor's tax refunds by the Chapter 13 trustee. In this district, any Chapter 13 debtor whose plan provides for less than a hundred percent repayment are required to turn over their tax refunds to the trustee. W. D. Ky. L.B.R. Rule 6070-1(e). Therefore, to the extent that the Debtor has tax refunds during the life of his plan, these funds will increase the overall repayment to his unsecured creditors. However, even without the assistance of the tax refunds, the Debtor should have some funds to pay unsecured creditors over the life of his plan. Based on the evidence in the record, the Debtor's plan complies with the mandate of Section 1325(a)(6).

---

[6] This sum was calculated by multiplying the weekly plan payment by the total number of weeks in the plan: $138.46 x 260 weeks.

[7] The sums for Blue Ridge and the Chapter 13 trustee fee are taken directly from the Debtor's plan. No other evidence was tendered to the Court in relation to these administrative expenses.

[8] The sum for Evansville Teachers Federal Credit Union comes from an Agreed Order it entered into with the Debtor to settle a non-dischargeability action. The Debtor agreed that ETFCU would have a $2,000 secured claim which accrued interest at 6% per annum until paid in full. The number reflected herein above assumes a repayment period of five years.

[9] The amount listed for Russ Wilkey, attorney for the Debtor, reflects the fees he has accrued up to the time he filed the Debtor's Response to Brief in Support of Objection to Confirmation of Plan, [R. 31]. It is reasonable to assume that Mr. Wilkey's fees will increase slightly due to the subsequent hearing held by this Court. Nonetheless, even if his fees increased by $1,000, the Debtor's overall plan payment would still be sufficient to provide some return to his unsecured creditors.

**IV.     Procedural Considerations**

Finally, the Court notes that Blue Ridge's position has evolved over the course of this dispute. Blue Ridge's original Objection to Confirmation argued that the Boat "is not necessary to an effective reorganization" and that Debtor "does not have good title to the [B]oat." [R. 12]. However, Blue Ridge's subsequent Memorandum in Support of Objection expanded their position, introducing novel arguments that Debtor's plan "has not been proposed in good faith" and that the plan itself was not feasible as proposed. [R. 30]. At the August 10, 2021 hearing, Blue Ridge indicated that feasibility was as much of a concern to them as the matter of whether the Boat could be estate property: "I know the Court was more interested in . . . whether this is property of the estate and whether the debtor can include this boat in his plan. But we really have very, very serious concerns about feasibility in this case." August 10, 2021 Hearing Transcript, [R. 40], Tr. 13:17-21.

Notably, Blue Ridge at no point sought an evidentiary hearing as to Debtor's bad faith or the plan's infeasibility, both of which are fact-based inquiries which could have been supported with evidence. Notwithstanding Blue Ridge's newly-raised arguments regarding bad faith and feasibility, the Court has considered and rejected each of those contentions. *See supra* at 11–14. Further, as stated *supra* at 3, the Court invited the parties to file additional briefs on the specific question of whether the Boat was property of the estate prior to the second hearing, but both sides opted not to brief the issue any further, relying on arguments and facts already presented. Particularly where neither party sought an evidentiary hearing on those or other matters raised later, such as unpaid personal property taxes on the Boat[10], nor chose to file an additional brief on

---

[10] Though Blue Ridge's supporting memorandum notes "there may be unpaid personal property taxes owed against this boat, for which the Debtor's Plan makes no provision," [R. 30 at 3], Missouri law is clear that the holder of the certificate of title – who in this case is still Landon Holmes, since Debtor was denied good title – is the individual responsible for paying the Boat's property taxes. Mo. Rev. Stat. § 306.030. Moreover, in Kentucky, liability for

17

the estate property question, the Court is satisfied that the parties had ample opportunities to present their arguments and evidence both in person and into the record.

As the Supreme Court of the United States has frequently held, "[a] common idiom describes property as a 'bundle of sticks'—a collection of individual rights which, in certain combinations, constitute property." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1937–38 (2019); *United States v. Craft*, 535 U.S. 274, 278 (2002). Debtor's possessory interest may be but one stick in that bundle, but as the applicable case law demonstrates, it is an impactful one. As bankruptcy courts in this Circuit consistently have held, "[m]ost possessory interests are within the bundle of rights encompassing the property of the estate and are entitled to the protection of the automatic stay." *In re Printup*, 264 B.R. 169, 174 (Bankr. E.D. Tenn. 2001) (citing *Skinner v. Cumberland Auto Ctr.* (*In re Skinner*), 238 B.R. 120, 124 (Bankr. M.D. Tenn. 1999) ("The automatic stay protects the debtor's possession of property even if the debtor has no other interest in the property."); *Arango v. Third Nat'l Bank* (*In re Arango*), 992 F.2d 611, 614 (6th Cir. 1993) (possessory interest in entireties property is property of the estate). Given the totality of the circumstances in this case, this Court agrees with those courts that have held that "[t]he intention of the parties, rather than the certificate of title, determines property rights in a vehicle." *In re Printup*, 264 B.R. at 173 ("A valid transfer of ownership of an automobile does not depend on compliance with the motor vehicle title laws, which were designed to deter trafficking in stolen cars."). Satisfied that the Debtor intended to legally purchase and possess the Boat, and finding no basis to deny confirmation due to bad faith, infeasibility of the plan, or any other basis, the Court will confirm Debtor's Chapter 13 plan.

---

property tax attaches at the time of registration. Ky. Rev. Stat. § 132.487(1). Since the Debtor's certificate of title and registration were rejected by the county clerk, it stands to reason that no tax is yet due to Kentucky. Thus, Debtor would not be responsible for paying taxes on the Boat until he received valid title, which would not occur until Blue Ridge's lien is satisfied through the plan.

18

For all of the foregoing reasons, this Court **DENIES** the objection of Blue Ridge Bank and **CONFIRMS** the Debtor's Chapter 13 plan. A separate order of confirmation shall be entered by this Court.